Hillsborough, ⎱ No. 3525.
Jan. 2, 1946. ⎰

SARAH MANDELL *v.* DODGE-FREEDMAN POULTRY COMPANY.

ELAINE MANDELL *v.* SAME.

BENJAMIN AND CHARLOTTE MANDELL *v.* SAME.

ABRAHAM B. MINTZ *v.* SAME.

*J. Morton Rosenblum* and *Robert W. Upton* (*Mr. Upton* orally), for the plaintiffs.

*Sheehan & Phinney* and *Arthur A. Greene, Jr.* (*Mr. Greene* orally), for the defendant.

PAGE, J. The plaintiffs excepted to an instruction that the fact that Elaine was operating under Mintz's supervision did not make her driving lawful on the ground that she was receiving further teaching in driving. Both Elaine and Mintz testified clearly that no such teaching was in fact given. As plaintiffs they are bound by their testimony. *Harlow* v. *Leclair*, 82 N. H. 506. Since Elaine was at the time not "being taught" as provided by R. L., c. 117, s. 10, she was not legally excused for driving without a license. The exception is overruled.

The jury were instructed "Of course if you do find her [Elaine] unfit to drive a car, that is the end of her case, and it is also the end of Corporal Mintz's case and the cases of Benjamin and Charlotte Mandell because their cases depend on Elaine's. . . . " The ground of the exception, as stated to the Presiding Justice at the time, was that "she would not be barred [by her unfitness] unless her unfitness was a cause of the accident. In other words, unfitness which is not causal is not a bar."

Under the rule announced in *Johnson* v. *Railroad*, 83 N. H. 350, 364, the want of an operator's license was "causal in the strictest sense" of any accident in which an unlicensed operator of a motor vehicle was involved. This arose from an interpretation of the statute (then P. L., c. 101, s. 9, now R. L., c. 117, s. 9), making it a misdemeanor for an unlicensed person to operate a motor vehicle on the highway. By the interpretation, civil liability was made to depend solely upon the driver's possession or lack of a license.

By Laws 1937, c. 69, a clause was added to the statute reading thus: "and if any person shall operate a motor vehicle in violation of this section such violation in any civil action shall be *prima facie* evidence of his unfitness to operate a motor vehicle." This amendment, by fair implication, changed the basis of civil liability. Where liability theretofore had been based on driving without first obtaining a license, thenceforth it was to be founded on unfitness to drive, and the failure to obtain a license became merely rebuttable evidence of such unfitness. *Bennett* v. *Dupuis*, 92 N. H. 265. From that time the want of a license, in civil actions like the present one, could have no other effect. Being deprived of effect, want of a license cannot be "causal in the strictest sense" or any other sense, civilly, except as *prima facie* evidence of unfitness. Those words *"prima facie"* emphasize the legislative intention to get away from the rigidity of the rule in the *Johnson* case and to substitute factual considerations for conclusions of law.

It is a matter of common knowledge that the rule in the *Johnson* case has been freely criticized as unduly harsh and unrealistic. It is fairly to be thought that the amendment of 1937 was adopted with this criticism in mind. Therefore, when the Legislature substituted for lack of a license "causal in the strictest sense" a free inquiry into the fitness of an unlicensed operator as the ground of civil liability, it seems like judicial presumption to suppose that the Legislature intended unfitness to drive, if found, to be "causal in the strictest sense" of every accident in which the driver might be involved. In our opinion it much better harmonizes with the historical background and context of the amendment to say that the Legislature intended that unfitness to drive, when found after free inquiry as to all relevant evidence, should have legal significance in cases where one drives without first obtaining a license only if, like negligence or other faults generally, it appears to be factually causal in whole or in part.

The result thus reached is not inconsistent with *Bennett* v. *Dupuis*, *supra*. In that case the finding was compelled, factually, that the

plaintiff was unfit to drive on the highway and that his unfitness was at least in part the cause of his injuries. There was no need to discuss the question whether his want of a license was "causal in the strictest [statutory] sense." Therefore it was unnecessary to decide whether the defendant was causally at fault, and the issues as to the defendant's fault were studiously ignored. Even if Dupuis was at fault, the plaintiff was barred. The cases of these plaintiffs stand differently. The jury was properly given the following issues: (1) was Elaine negligent? (2) if so, was her negligence in any part causal of the accident? (3) was the defendant's driver negligent? (4) if so, was his negligence causal? But there was another possible cause of the accident here considered that might bar Elaine, her parents and Mintz; that was unfitness to drive, and this was given to the jury without instructions to decide whether her unfitness, if found, was in fact and in part a cause of the accident. Instead they were told that unfitness would bar them in any event.

*Straut* v. *Carpenter*, 92 N. H. 123, 124, suggested that the amendment of 1937 "was evidently designed only to modify the rule of the *Johnson* case and related only to driving without first obtaining a license." The facts of that case did not require decision of the extent of the modification in a case such as we are now considering, and no attempt was made to discuss it. Hence nothing in the *Straut* case is to be taken as opposed to the foregoing interpretation of the act of 1937 when applied to the fault of one who drives without first obtaining a license.

The plaintiffs excepted to the charge that if Elaine was "unfit to drive in an emergency . . . you will not excuse her," objection being stated that unfitness to drive in an emergency is not the test, and that unfitness in any case must be causal. The charge given related, as we understand it, to factors that would deprive Elaine of the benefit of the emergency doctrine. It was stated in the terms that "if you think she was unfit to act in this emergency and that unfitness caused or helped to cause the accident . . . you will not excuse her and you will find her to blame." As to causation, the charge was in this instance correct, but the charge should properly have been that if unfitness to *drive* was causal of the *emergency*, Elaine could take no advantage of being forced to act in an emergency that her fault had helped to create. It seems that if no fault of hers were causal of the emergency in any part, her actions while in the emergency would be judged by precisely the same tests as would those of a licensed driver who is unfit to drive.

The exception to the admission of a question requires no consideration, as the same situation is not likely to recur.

*New trial.*

BRANCH, J., concurred. JOHNSTON, J., concurred except as to the views expressed in regard to *Straut* v. *Carpenter*, 92 N. H. 123 and *Bennett* v. *Dupuis*, 92 N. H. 265, which cases he believed should be overruled.

MARBLE, C. J., and BURQUE, J., *dissenting:* In our opinion the amendment of 1937 (Laws 1937, c. 69) was designed "only to modify" the rule of the *Johnson* case. *Straut* v. *Carpenter*, 92 N. H. 123, 124. If the unlicensed operator is found fit to operate a motor vehicle, his failure to have a license is immaterial. But if he is found unfit in this respect (or does not rebut the presumption of unfitness), his lack of a license *is* material and the rule of the *Johnson* case applies.