Ferriel M. BARNETT, Appellant,

v.

TERMINAL RAILROAD ASSOCIATION
OF ST. LOUIS, a Corporation,
Appellee.

No. 15413.

United States Court of Appeals
Eighth Circuit.

Jan. 17; 1956.

Rehearing Denied March 2, 1956.

Robert W. Gilcrest, St. Louis, Mo. (Haley, Fredrickson & Caruthers, St. Louis, Mo., were with him on the brief), for appellant.

Wayne Ely, St. Louis, Mo., for appellee.

Before GARDNER, Chief Judge, and WOODROUGH and VOGEL, Circuit Judges.

GARDNER, Chief Judge.

This was an action brought by appellant to recover damages for injuries suffered by him while in the employ of appellee. We shall refer to appellant as plaintiff and to appellee as defendant. The defendant is a railway corporation operating as a common carrier in interstate commerce and at all times pertinent to this action was the owner and operator of the terminal facilities at St. Louis, Missouri, for all common carriers operating into, through or out of that city.

At the time of receiving his injuries plaintiff was employed by the defendant as a car inspector and repairman in its railroad yards at St. Louis, Missouri. The case has been tried three times. On the third and last trial plaintiff filed an amended complaint which in substance charged as acts of negligence as the basis for recovery that on December 29, 1950 plaintiff was engaged in the course of his employment by defendant in inspecting brake shoes and making an air test on passenger cars of the Wabash Railroad Company which other employees of the defendant had previously placed in the coach yard and were subsequently to re-move and that the defendant negligently allowed and permitted the air brake hose and the steam pipe on each of two of said cars to remain uncoupled and in a position where steam was escaping from the steam pipe between the cars at a time when the weather was below freezing and as a direct result of such negligence ice formed in and upon the couplers of the air hose and wholly or partly as a result thereof plaintiff was unable to make a secure coupling of the air hose by reason of the existence of ice in and on such coupling so that they burst apart, struck and injured plaintiff. This complaint was an amended and substituted complaint in that it did not by reference or otherwise embody the allegations of the complaint as originally filed. The defendant by its answer denied each and every allegation of the amended complaint except as admitted and it admitted the jurisdictional allegations, admitted that at the time of receiving his injuries plaintiff was in its employ as a car repairman but denied that it was guilty of any negligence and affirmatively pleaded that whatever injuries plaintiff sustained on the occasion mentioned in his amended complaint resulted solely from or were caused by plaintiff's own negligence.

At the time of the accident resulting in plaintiff's injuries plaintiff was an experienced machinist having been employed by the St. Louis-San Francisco Railway Company for thirty years and by the defendant for some eighteen months. On the day of the accident he began working at 12:30 a. m. His first job was to replace worn brake shoes and to make minor repairs on the Wabash Blue Bird passenger train and check the equipment for air and steam leaks. This Blue Bird train when it arrived in the yards at St. Louis was carrying an extra car between the dining car and the observation car. Prior to the time plaintiff inspected the train this extra car had been cut out and the cars had been recoupled. The hose connecting the air brake line and the hose connecting the steam line had, however, not been con-

nected and there was escaping steam from the disconnected end of the steam line hose. The temperature stood at about twenty degrees above zero and there was ice accumulated on the coupling heads of each of these disconnected hose. Plaintiff in discharge of his duty as a car inspector and repairman entered between the cars where the hose were disconnected and exposed and with his hammer knocked the ice off the head of each of these exposed hose and connected each with the hose of the car immediately ahead of it. After connecting the steam hose and air brake hose between the two cars he proceeded westwardly along the train blocking each car as he went and when he arrived at the westernmost end or the head end of the train he hooked the steam line from the yard to the train so that the whole train would have steam on it. He then went to the easternmost or rear end of the train blocking cars as he went and hooked the air brake hose of the train to the air line in the yards and turned on 110 pounds of air pressure. He then returned to the space between the dining and observation car and observed a leak in the steam hose connection between these two cars. While he was attempting to tighten the steam line coupling which was leaking the air brake hose connection separated striking him on the knee.

■■ The facts will be further developed in the course of this opinion. At the close of all the evidence defendant moved for a directed verdict on the following grounds: (1) That the evidence was not sufficient to sustain any allegation of plaintiff's complaint against defendant; (2) That the evidence fails to establish any violation of the Safety Appliance Act, 45 U.S.C.A. § 1 et seq.; (3) That the evidence fails to establish that the air hose coupling came apart by reason of any negligence on the part of defendant; (4) That the evidence proves that the air hose coupling came apart solely by reason of plaintiff's negligence; and (5) That the evidence proves that plaintiff failed to put the air hose coupling together properly and securely and that he

knocked it apart with a hammer. The court deferred passing on the motion for a directed verdict and sent the case to the jury. The instructions are not to be found in the record before us and, hence, will be assumed to be correct in every respect. The jury failed to agree and was in due course discharged. Thereafter defendant made a motion for judgment in accordance with its motion for directed verdict. The court granted defendant's motion and entered judgment dismissing plaintiff's complaint on its merits and from the judgment so entered plaintiff prosecutes this appeal seeking reversal on substantially the following grounds: (1) The court erred in directing a verdict for the defendant and entering judgment for the defendant and dismissing plaintiff's complaint upon its merits. There was substantial evidence to support the hypothesis that defendant negligently set cars in its yards in cold weather with the air and steam lines disconnected so that ice formed on the air brake hose coupling causing it to burst apart and injure the plaintiff; and (2) The court erroneously excluded from the case certain evidence adduced by plaintiff and establishing that ice in the locking mechanism of the air brake hose would cause it to burst apart under pressure.

■■ We shall first consider the action of the court in withdrawing from the jury's consideration a piece of hose and testimony with reference thereto, the hose not having been introduced in evidence. In the course of the trial plaintiff called one McCauley as a witness who testified with reference to the two pieces of hose that had been introduced in evidence. He testified with reference to these hose, using them by way of illustration, that the hose was in two parts, each part being equipped with a "head", with a "lip" on one head and a groove on the other and the coupler of the hose was locked together by fitting the lip into the groove. Plaintiff's counsel marked the lip and groove of the coupler with chalk and the witness put them together and explained to the jury

that the locking of the coupler by fitting the lip into the groove would prevent the heads from pulling apart on lateral movement and further testified that if the coupler "was wore to the point that there was no tongue-and-groove left, or if the head of the hose is spread apart in some way, then it would pull apart." After having been excused the witness was recalled as plaintiff's last witness. When recalled counsel for plaintiff produced a piece of hose similar in appearance to the two pieces of hose that had been introduced in evidence and interrogated the witness with reference thereto. He did not announce to the court nor to opposing counsel that the hose so produced was not one of the pieces of hose already admitted in evidence. Ordinarily the only testimony admissible with reference to this piece of hose would have been testimony for the purpose of laying a foundation for its admission in evidence. It is elementary that a witness may not be interrogated with reference to a physical exhibit which has not been admitted in evidence and it is perfectly manifest on the record that neither the court nor opposing counsel knew that this so-called exhibit had not been previously admitted in evidence. This physical exhibit though entirely foreign to the record was exhibited to the witness and to the jury and it was shown that there was in the groove an obstruction consisting of certain metal and the witness was interrogated with reference to the effect the presence of such a substance might have in making a secure coupling. Following the closing of the testimony counsel for defendant in the court's chambers made known to the court that this piece of hose was not one of the pieces that had been introduced in evidence and contended that it had been improperly used for demonstration purposes. The case was thereupon reopened and defendant's motion to strike all evidence that had been introduced with reference to this piece of hose was sustained. Plaintiff did not attempt to reoffer any part of the testimony so stricken. In support of its motion to withdraw the exhibit from consideration of the jury and to strike the testimony with reference thereto counsel for plaintiff was called as a witness and, among other things, testified that when he first called Mr. McCauley to the stand he made use of two certain couplers or two pieces of air hose in making certain demonstrations and that when he called Mr. McCauley back to the stand he produced one of those two original pieces and a third and different piece of air hose which he used for another demonstration; that the third piece of air hose had not previously been used in the case; that when he produced the third hose he did not announce that it was a different one; that the flange on the lip of the third air hose had been filled in with metal at his direction; that before using it he did not advise the court nor opposing counsel that it was a different air hose from the one he had been using; that he picked it up from the floor under the table and that "I did not make any statement to you or His Honor, or to Mr. McCauley or to the jury, or anyone, that I have a third air hose here"; that in having the lip of one connection filled with metal, "I acted upon my own suggestion." The locking mechanism in the third piece of hose had been so altered by inserting a foreign piece of metal therein as to render it ineffective and wholly unlike the actual condition of a normal locking mechanism. We think the court on its own motion would certainly have been warranted in taking the action which it did. The third piece of hose in its altered condition would certainly be deceptive and misleading. 32 C.J.S., Evidence, § 607, p. 457. The evidence was not properly admissible but this was not made to appear until subsequent to the time it was offered and in such circumstances it was proper upon motion subsequently made to strike it from the record. Specht v. Howard, 83 U.S. 564, 21 L.Ed. 348.

To entitle a plaintiff to recover in an action brought under the provisions of the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., the burden of proof is upon him to prove the

carrier guilty of negligence and that such negligence was the proximate cause in whole or in part of his injuries. Wolfe v. Henwood, 8 Cir., 162 F.2d 998; Tennant v. Peoria & P. U. R. Co., 321 U.S. 29, 64 S.Ct. 409, 88 L.Ed. 520; Brady v. Southern R. Co., 320 U.S. 476, 64 S.Ct. 232, 88 L.Ed. 239. It was the theory of the plaintiff on this third trial that the coupling of the air brake hose, although apparently made, parted because of the presence of ice on the inside of the coupler. In this connection it is to be observed that at two previous trials no such contention was urged. On the first trial he attributed the separation of the coupling to a sudden jerk of the train. In his signed statement made at the hospital following the accident he said that the air hose coupling came apart when he tapped it with a hammer and it was not until the third trial that any claim of negligence was based on the fact that the defendant in removing the car that had been transported between the observation and dining cars had negligently failed to connect the air brake hose and the steam hose with the car immediately in front of it. Plaintiff admits in his testimony that as a car inspector and repairman it was his duty to remove the ice that had accumulated on the coupling ends of the steam hose and the air brake hose and he testified that in discharge of this duty he did remove this ice. Touching this phase of the case he, among other things, testified on direct examination that before he coupled the air brake hose together there was ice on the coupling that "was piled up there, kind of mushroom-like * * * right on that end there where the connection is"; that the pile of ice was "as big as your fist, or bigger," and "covered that head on the air hose"; that he took his hammer and knocked it off and hooked them together; that he had his hammer in his right hand and a lantern in his left hand and that he lay the lantern on the side of the car to keep from hitting it with the hose; that he took hold of the hose and hit it with his hammer about twice, "just enough to knock the ice off of it"; and that he coupled the air hose together and "beat the ice off the steam heat line" and hooked it together. On cross-examination, among other things, he testified that he knocked the ice off; that he didn't know for sure whether he knocked it all off because he didn't inspect it but just placed the couplers together; that it was his job to knock the ice off and that "You have to knock it off to make a coupling if you got ice on"; that when he put the couplings together "they went down and locked, just like they usually do, routine work, work every night on it. * * * they buckled and dropped down like that there, that is what we go by"; that the ice which he knocked off had formed on one coupler head from the condensation which came from the steam line but that he knocked it off with his hammer; that after he knocked the ice off and coupled the hose he "just picked it up and hit it like that there and laced them together and they went together all right; that there wasn't anything he could notice to keep them from going together; that the couplers "would not go plumb down together if there was any ice in here," and that when he put them together he did not notice anything wrong with them; that there is an interlocking device consisting of a groove on one coupler head and a lock washer on the other; that the groove or flange is about a quarter inch deep and that the lock washer fits into it; that he thought it coupled all right and that if there had been anything in there such as ice or anything else it could not have gone together and coupled. The steam or moisture which condensed on this coupler came from the steam line hose. There was no moisture passing through this air brake hose. After the ice had been removed from the couplers and the coupling had been made plaintiff turned on 110 pounds of air pressure to pass through this air brake hose coupler. When he returned to the couplers in question it was not claimed that he noted anything wrong with the air brake hose coupler but that the steam line hose coupler was leaking and it was in con-

nection with his attempt to cure the steam hose leak that the air brake hose coupler burst apart. In this connection it is to be noted that plaintiff in his written statement as to how the accident occurred stated that the air hose came apart after he struck it with his hammer. It was not until the third trial of this case that he testified that it came apart when he struck the steam hose with his hammer. It is also to be noted in this connection that plaintiff alone testified as to the presence of ice on these hose couplers and as to the manner in which the accident is alleged to have happened. Such of his statements and testimony as is against his interest is presumed to be true and in these circumstances the rule as to directing a verdict may be stated as follows: Where a party's own testimony, if true, would defeat his right to a verdict, and such statements are not modified or explained, a verdict may be directed against him. Harlow v. Leclair, 82 N.H. 506, 136 A. 128, 50 A.L.R. 973; Nicolai-Neppach Co. v. Smith, 154 Or. 450, 58 P.2d 1016, 107 A.L.R. 1124; Mandell v. Dodge-Freedman Poultry Co., 94 N.H. 1, 45 A.2d 577, 163 A.L.R. 1370. There was no evidence whatever that there was any ice on the interior of this coupler and no testimony from which a jury could reasonably infer that the hose burst or came apart because of the presence of ice in the interior of the coupler. Such inference could be based only upon conjecture, possibility, speculation or guess. In such circumstances it cannot be said that there is substantial evidence sustaining plaintiff's contention and, hence, as a matter of law plaintiff was not entitled to recover. Wilkerson v. McCarthy, 336 U.S. 53, 69 S.Ct. 413, 93 L.Ed. 497; Moore v. Chesapeake & O. R. Co., 340 U.S. 573, 71 S.Ct. 428, 95 L.Ed. 547; Pennsylvania R. Co. v. Chamberlain, 288 U.S. 333, 53 S.Ct. 391, 77 L.Ed. 819.

■■ But we think the evidence is insufficient to sustain a verdict for plaintiff for another reason. This plaintiff was according to his testimony a car inspector and repairman. As such it was his duty to make such repairs on these hose as was necessary to allow them to couple safely. This mechanism, it may be said, was in bad repair when he went on duty and it was his job, and his alone, to make the necessary repairs. There is no claim that during the time he was making the repairs the defendant failed to furnish him with proper tools or failed to furnish him with a reasonably safe place to make the repairs or actively did anything that resulted in his injuries. A mechanic could not, we think, be heard to complain that it was the negligence of his employer that caused the mechanism to get out of repair. It might be said that there would be no occasion for the mechanic to perform any duty if the mechanism were not out of repair. By analogy we may consider the case of an automobile mechanic. The owner of a car through his own negligence has had a collision resulting in damage to the car. The mechanic is called to repair it. If injured in so doing he certainly could not attribute the original negligence of the owner of the car as the proximate cause of his injury. So in the instant case, if there was any negligence on behalf of the defendant in failing to connect up the hose in controversy earlier than it did that would not be the proximate cause but would simply furnish the opportunity for the infliction of injuries. Fraser v. Chicago, R. I. & P. R. Co., 101 Kan. 122, 165 P. 831, L.R.A. 1917F, 749. If there was ice on the inside of this coupler, and we have pointed out that there is no evidence that there was, that was because plaintiff did not remove it and his negligence in failing so to do would be the sole proximate cause of the accident. Chicago, St. P., M. & O. R. Co. v. Arnold, 8 Cir., 160 F.2d 1002; Louisville & N. R. Co. v. Davis, 6 Cir., 75 F.2d 849; Pere Marquette R. Co. v. Haskins, 6 Cir., 62 F.2d 806. While contributory negligence is not a defense to an action brought under the Federal Employers' Liability Act yet where the negligence is that of the employee alone there can be no recovery. In Chicago, St. P., M. & O. R. Co. v. Ar-

nold, supra, [160 F.2d 1006] this court approved as proper an instruction that "if the jury found that the plaintiff was guilty of negligence and 'that his negligence was the sole proximate cause of the accident and his injuries' the verdict should be for the defendant."

The claim that this court in the first appeal in this case, Barnett v. Terminal R. Ass'n of St. Louis, 8 Cir., 200 F.2d 893, held that the defendant might be found guilty of actionable negligence because it had failed to connect the hose between the dining and observation cars is wholly without merit. That question was not before the court and the court was merely emphasizing the wisdom of the precautionary procedure of deferring passing upon motion for directed verdict until after the case had been submitted to the jury.

We have given careful consideration to all the other contentions urged by plaintiff on this appeal and are of the view that they are wholly without merit. The judgment appealed from is therefore affirmed.