Strafford
No. 78-218

BRENT L. REID

v.

SPADONE MACHINE COMPANY

June 20, 1979

*Burns, Bryant, Hinchey, Cox & Shea,* of Dover (*Donald R. Bryant* orally), for the plaintiff.

*Calderwood, Ouellette & Hallisey,* of Rochester (*William L. Tanguay* orally), for the defendant.

GRIMES, J. This is a products liability case brought to recover for personal injuries allegedly suffered as a result of a defect in the design of an industrial guillotine-type cutting machine manufactured by the defendant, Spadone Machine Company. The case, which was tried on the theory of strict liability in tort, RESTATEMENT (SECOND) OF TORTS § 402A (1965), arose when the plaintiff suffered serious injury to one hand while operating the machine in the course of his employment at Davidson Rubber Company. A jury trial resulted in a verdict for the plaintiff in the amount of $150,000. The defendant requests a reversal of the verdict and, in the alternative, a reduction of the damages.

Three issues are presented for review. First, does the evidence support a verdict of strict liability in tort; second, did the trial court

err in ruling that the defendant could not argue Davidson's conduct as the sole proximate cause of the accident; and third, is the award of $150,000 so excessive as to require a remittitur.

The record discloses the following history. Plaintiff joined the employ of the Davidson Rubber Company (hereinafter Davidson) in 1970. In October 1974, he was transferred from Davidson's main plant to its New Products Division. Once with the new division, plaintiff became a plastics demolder, meaning essentially that he emptied large rectangular molds of plastic and cut the plastic into uniformly sized squares. These squares were later used for polyurethane production.

The demolding was originally done with a "hot knife," an electrical device used to score and then cut the plastic while still in the molding pan. In September 1974, however, Davidson replaced the hot knife with a new *Spadone 24-10* bail cutting machine. It is the design of this machine that is the subject of this case.

The *Spadone 24-10* is essentially a table-mounted guillotine. It is designed to cut a variety of materials, the only apparent limitation being that of dimension: The machine cannot accept materials in excess of twenty-four inches in width and fourteen inches in height. The machine's twenty-four-inch cutting blade is actuated by the simultaneous pressing of two palm buttons located, at the time of the accident, on the side of the machine. In normal operation, the blade rests some fourteen inches above the flat cutting surface known as the "strike plate." When the buttons are depressed, compressed air fills a pressurized cylinder and the blade begins its descent; when the buttons are released, the blade returns to its uppermost position. The blade is also capable of producing a chopping action if the operator repeatedly presses the buttons before the blade returns to the top of its mount.

The *Spadone 24-10* has been manufactured and sold by the defendant for nearly twenty-five years. Until 1972, the cutter was manufactured with the palm buttons on the front of the machine, facing the operator. In 1972 their position was changed to an arm at the machine's side away from the open cutting area. Defendant's witnesses testified that this change was made after the company learned that some operators were rigging a bar on the two buttons on the front, thereby facilitating one-handed operation of the machine. This, it was feared, would lead to dangerous machine operation and an increased possibility of hand injury. The change was designed, therefore, to require the operator to load the machine and then walk to the side of the machine to actuate the blade's descent. According to the

defendant, the machine was known by Davidson and by industry in general as a low-volume, one-person utility cutter, and its redesign was never intended to change its use to a two-person machine.

The defendant sold the machine to Davidson on September 12, 1974. Included with the machine was a brochure describing the machine and its general use. No other literature or instructions were included. The brochure depicted and described the machine as it had existed prior to 1972, that is, with the buttons on the front of the machine. Neither the brochure nor the initial correspondence between Davidson and the defendant stated that the machine was to be operated by one person only. It appears, however, that Davidson's engineers recognized the machine's intended one-person use when they inspected it upon its arrival.

Before putting the machine in use, Davidson's engineers added a safety screen around the area of the blade, fashioned a plastic push stick to be used by the operator for removal of material that had previously been cut, and conducted an instructional demonstration of the machine's operation for the employees of the New Products Division. During the instruction period the employees were directed to use the cutter as a one-person operation only. The plaintiff, however, was not present at the demonstration, and testified that he was never personally instructed that two-person operation was forbidden.

The conduct of Davidson and its agents with regard to the use of the machine is fully disclosed by the evidence. After the machine was placed in service, management became aware of the fact that the machine was occasionally used by two men, one as a feeder and one as a button pusher. Initially, those found using it in such fashion were stopped. Even so, plaintiff's testimony indicates that it was used as a two-person machine approximately ten to thirteen percent of the time. Supervisors testified that "things got out of hand" as far as the two-person use went, one supervisor even admitting that he occasionally engaged in the practice himself.

Plaintiff's injury occurred while he and another employee were using the machine on November 15, 1974. Plaintiff's twelve hour shift was nearly over when a fellow employee, James Foley, Jr., decided to assist him in the demolding operation. The two men alternated positions, one feeding the plastic mold under the blade from one direction, the other then rotating the mold ninety degrees and pushing it back through the machine's blade. When one was feeding, the other was pressing the buttons to actuate the blade.

Plaintiff was acting as the feeder when the accident occurred. Foley had just finished feeding the mold from the front of the machine to the back. Plaintiff rotated the mold, now cut into several elongated strips, and began pushing it back through. Foley, who because of his position at the buttons was unable to see the location of plaintiff's hands, pressed the actuating buttons every few seconds. No signals, audible or otherwise, were used by the two. After the last cut had been made, and while the blade was rising, plaintiff reached underneath the blade and, without using the push stick, shoved the cut material back through to the front of the machine. Foley pressed the buttons once more. The blade immediately ceased its upward motion and began its cutting descent. Plaintiff lost portions of three fingers from his right hand.

Plaintiff brought this personal injury action based on strict liability alleging that the defendant had defectively designed the bail cutter, that the machine was unreasonably dangerous, and that his injuries were proximately caused by its design. *See Stephan v. Sears, Roebuck & Co.*, 110 N.H. 248, 266 A.2d 855 (1970). Plaintiff's claim of defect was that by moving the buttons to the machine's side, the operator was required to step away from the feeding area and walk to the side to actuate the blade, thus leaving the feeding area open for another person and encouraging two-person use.

Prior to and during the course of the jury trial, defendant asserted its intent to argue two defenses, plaintiff's contributory negligence, and Davidson's intervening negligence in not preventing the known practice of two-person use. The trial court, however, ruled over objection that defendant could not use as a defense Davidson's conduct as a superseding cause. Defendant also took exception to the court's denial of its timely motions for a nonsuit, dismissal, directed verdict, judgment notwithstanding the verdict, and new trial. The jury returned a general verdict for the plaintiff, and *King*, J., reserved and transferred defendant's exceptions.

 The first issue is whether, on the basis of the evidence before it, the trial court erred in denying defendant's motions relating to the sufficiency of the evidence. We will not upset denials of motions for nonsuit, dismissal, directed verdict, or judgment n.o.v. where there is sufficient evidence in the record to support the ruling. *See generally Kierstead v. Betley Chevrolet-Buick, Inc.*, 118 N.H. 493, 497, 389 A.2d 429, 431 (1978); *Amabello v. Colonial Motors*, 117 N.H. 556, 561, 374 A.2d 1182, 1185 (1977). Defendant concedes the strict standard, but

argues nevertheless that no cause of action in strict liability was proved. We disagree. "In a strict liability case alleging defective design, the plaintiff must . . . prove the existence of a 'defective condition unreasonably dangerous to the user,'" *Thibault v. Sears, Roebuck & Co.*, 118 N.H. at 807, 395 A.2d 843 at 846, "that the unreasonably dangerous condition existed when the product was purchased," *id.* at 809, 395 A.2d at 847, "that the dangerous condition caused the injury," and "that the purpose and manner of his use of the product was foreseeable by the manufacturer." *Id.; see* RESTATEMENT (SECOND) OF TORTS § 402A, Comment *g* (1965). *See generally Hagenbuch v. Snap-On Tools Corp.*, 339 F. Supp, 676, 680 (D.N.H. 1972); *McLaughlin v. Sears, Roebuck & Co.*, 111 N.H. 265, 268, 281 A.2d 587, 588 (1971).

■ The evidence supports a finding that the machine was defectively designed. Placement of the buttons on the side required the operator to leave the feeding area open while he actuated the blade. This could be found not only to permit, but actually to encourage, two-person operation. This condition, coupled with inadequate warnings against two-person use, could properly be found to have made the machine "unreasonably dangerous." *Thibault v. Sears, Roebuck & Co.*, 118 N.H. at 809, 395 A.2d at 846--47; RESTATEMENT (SECOND) OF TORTS § 402A, Comment *h* (1965). This condition certainly existed at the time of purchase.

When the buttons were moved to the side of the machine the danger from one-handed operation of the blade was diminished but the danger of two-person operation was increased. There was evidence that the danger created by a bar being placed across the buttons on the front could have been avoided, for example, by placing one button on each side facing out, thus requiring inward pressure in opposite directions. This design would have discouraged two-person use because the operator would have had to occupy the feeding area while pushing the buttons. In comparison, positioning the buttons to one side not only left open the feeding area for a second person, but required extra effort and time on the part of the single operator. The natural tendency being to save unnecessary effort and time, two-person use was facilitated.

■■ The jury could properly find that the defect was a proximate cause of the injury. The existence of concurrent causes will not in and of itself vitiate a finding that one cause was a proximate cause of the

464

injury. *See Thibault v. Sears, Roebuck & Co.*, 118 N.H. 802, 395 A.2d 843 (1978); *Town of Hooksett v. Amoskeag Mfg. Co.*, 44 N.H. 105, 111 (1862).

 The evidence of the foreseeability of two-person use was also sufficient to justify the jury's finding of liability. In the normal case, "[r]easonableness, foreseeability, utility, and similar factors are questions of fact for jury determination." *Thibault v. Sears, Roebuck & Co.*, 118 N.H. at 809, 395 A.2d at 847–48; *accord, Lewis v. Stran Steel Corp.*, 57 Ill. 2d 94, 102, 311 N.E.2d 128, 133 (1974). *See also* 2 J. DOOLEY, MODERN TORT LAW: LIABILITY & LITIGATION § 32.79, at 358 (1977). The trial court committed no error in denying defendant's motions based upon the sufficiency of the evidence.

 Defendant also excepted to the denial of its motion that a new trial be granted on the grounds that the verdict was against the law and the evidence and against the weight of both the law and the evidence, and that the jury fell into plain mistake. Regardless of which standard of review we employ, *Kierstead v. Betley Chevrolet-Buick, Inc.*, 118 N.H. 493, 496, 389 A.2d 429, 431 (1978), we find no error in the court's denial of the motion for a new trial.

The second issue relates to the court's ruling regarding the superseding cause defense. *See generally Bellotte v. Zayre Corp.*, 531 F.2d 1100 (1st Cir. 1976); *Morin v. Manchester Housing Authority*, 105 N.H. 138, 195 A.2d 243 (1963). At trial, defendant sought to argue that Davidson's conduct, negligence, and misuse of the bail cutter was the sole proximate cause of plaintiff's injury. The position taken is not that plaintiff's damages should be apportioned by Davidson's comparative causation, but that plaintiff is not entitled to a verdict of any sort against the defendant, because Davidson's conduct and not the defendant's product was the sole proximate cause of the injury. Defendant contends that it is entitled to a new trial because the court committed reversible error in preventing the submission of this superseding cause argument to the jury. A careful consideration of the facts in the case, however, convinces us to the contrary.

 The manufacturer or seller faced with an allegation of strict liability in tort for a defective design may have several defenses against liability; for example, product misuse or abnormal use, *McLaughlin v. Sears, Roebuck & Co.*, 111 N.H. 265, 268, 281 A.2d 587, 588 (1971), and what was formerly termed contributory negligence or unreasonable assumption of the risk, *Thibault v. Sears, Roebuck & Co.*,

118 N.H. at 810, 395 A.2d at 848–49; *Buttrick v. Lessard*, 110 N.H. 36, 40, 260 A.2d 111, 114 (1969). These defenses relate to the comparative fault of the plaintiff and are now classified as "plaintiff's misconduct." *Thibault v. Sears, Roebuck & Co.*, 118 N.H. at 812, 395 A.2d at 849–50. With respect to a nonparty third person's conduct, however, the manufacturer's sole defense is that of total nonliability based upon the third person's conduct as a superseding cause. *See Bellotte v. Zayre Corp.*, 531 F.2d 1100, 1102 n.1 (1st Cir. 1976); *Lewis v. Stran Steel Corp.*, 57 Ill. 2d 94, 102, 311 N.E.2d 128, 133 (1974); RESTATEMENT (SECOND) OF TORTS § 440 (1965). In the usual case, no reason of the law stands to prevent a defendant in a products liability action from arguing a third person's negligence or misuse of the product as the sole proximate cause of the plaintiff's injury. *Cf. Murray v. Bullard Co.*, 110 N.H. 220, 223, 265 A.2d 309, 312 (1970) (upholding jury instruction on employer's intervening negligence in a products liability case brought against the manufacturer of a table lathe). The availability of this defense depends, however, on the foreseeability of the alleged misuse or negligence and on the nature of the alleged design defect.

In New Hampshire, the manufacturer is under a general "duty to design his product reasonably safely for the uses which he can foresee." *Thibault v. Sears, Roebuck & Co*, 118 N.H. at 809, 395 A.2d at 847; *accord, Uloth v. City Tank Corp.*, 384 N.E.2d 1188 (Mass. 1978). This duty is necessarily limited " 'to foreseeing the probable results of the normal use of the product or a use that can reasonably be anticipated.' " *Id., quoting McLaughlin v. Sears, Roebuck & Co.*, 111 N.H. at 268, 281 A.2d at 588. Thus, before a defendant may successfully argue a third person's negligence or misuse as a superseding cause, he must prove that the negligence or misuse was not reasonably foreseeable. *See Gordon v. Niagara Machine & Tool Works*, 574 F.2d 1182 (5th Cir. 1978); RESTATEMENT (SECOND) OF TORTS § 447(a) (1965).

However, by finding the machine defective in design, the jury has found that two-person use was foreseeable. It was the failure to guard against such foreseeable use that made the machine's design defective. This being so, that same use cannot be a superseding cause, even assuming that Davidson was negligent in not preventing that use. *See generally* RESTATEMENT (SECOND) OF TORTS §§ 442, 443 (1965).

The third and final issue presented is whether the trial court erred in denying defendant's motion for remittitur on the ground that the jury was "misled by some mistaken views of the merits of the case."

Plaintiff was awarded $150,000 total damages. At trial plaintiff proved the following out-of-pocket expenses: (a) Medicals of $727; (b) Lost wages of $7,123; for a total of $7,850.

Plaintiff's medical expert testified to a 30–40% permanent disability in plaintiff's right (predominant) hand. Evidence was also offered regarding plaintiff's embarrassment, pain and suffering, and mental anguish. Nevertheless, the evidence shows that plaintiff suffered only four days of "considerable discomfort," followed by several months of swelling and milder discomfort. Plaintiff is no longer able to grip hammers, etc., for use about the house. The balance of $142,150 was therefore awarded on the basis of the pain and suffering and disability damages.

Plaintiff was 24 years old and married at the time of accident. He had, at the time of trial, a life expectancy of 44.2 years. His earning capacity has not diminished, however, and he now earns more in wages than he did before the injury.

We recognize that this court should not interfere with a verdict except in a clear case. A majority of the court is of the opinion that this is such a case and that the verdict of $150,000 exceeds any rational appraisal of the damages. *Loney v. Parsons*, 111 N.H. 353, 284 A.2d 910 (1971). Although it is difficult to draw a precise line, one must be drawn somewhere. The majority is of the opinion that the evidence would not support a verdict in excess of $125,000, and we therefore remand the case for a new trial unless the plaintiff will accept a reduction in the verdict to $125,000.

What was said in *Wisutskie v. Malouin*, 88 N.H. 242, 245, 186 A. 769, 770 (1936) bears repeating. "It is a feature of a jury trial for the trial judge not only to see that the trial is fairly conducted but also to correct or vacate what turns out to be an unfair result. To inspect the product is no less a duty than to oversee the process of production." The foregoing applies to motions for both remittitur and additur.

*Remanded.*

All concurred.