Carroll
No. 92-429

## JERILDINE AND CHESTER E. CHELLMAN, III

### v.

### SAAB–SCANIA AB, SAAB CAR DIVISION & a.

December 17, 1993

*Pamela D. Albee*, of Ossipee, and *McLane, Graf, Raulerson & Middleton, P.A.*, of Manchester (*Arthur G. Greene & a.* on the brief and *Mr. Greene* orally), for the plaintiffs.

*Brown, Olson & Wilson, P.C.*, of Concord (*Howard B. Myers* and *Bryan K. Gould* on the brief and *Mr. Myers* orally), for defendants Saab-Scania AB and Saab-Scania of America, Inc.

*Wadleigh, Starr, Peters, Dunn & Chiesa*, of Manchester (*James C. Wheat* on the brief and *Ronald J. Lajoie* orally), for defendant Klippan Automotive Products, AB.

BROCK, C.J.   The plaintiffs, Jerildine and Chester E. Chellman, III, appeal from a jury verdict in favor of the defendants in a products liability case and from the Superior Court's (*Mohl*, J.) denial of their motions to set aside the verdict and for a new trial. On appeal, the plaintiffs allege errors by the trial court in instructing the jury on the law of strict products liability and warranty. We reverse and remand for a new trial.

The automobile accident giving rise to this action occurred in April 1985 when Chester Chellman took his brother-in-law for a ride in his new Saab 900 Turbo SPG on Canaan Road in Tuftonboro. After rounding a curve, Chellman saw a woman walking her dog in the road ahead of him. As he began to slow down and move to the left side of the road to avoid her, his car went out of control and off the road onto a sandy shoulder. When Chellman attempted to steer the car back onto the road, it "tripped" on the edge of the pavement and rolled, side over side, several times. The driver-side door opened during the rollover, and when the car came to rest, Chellman was outside of the car with his seat belt pulled out of the retraction device but still strapped around him. He was seriously injured in the accident.

The plaintiffs sued the manufacturer, Saab-Scania AB, Saab Car Division, and the distributor of the car, Saab-Scania of America, Inc. (together referred to hereinafter as "Saab"), the manufacturer of the seat belts, Klippan Automotive Products AB (Klippan), and the car dealer, Crest Chevrolet, Inc. In their writ of summons, the plaintiffs alleged counts of negligence, express and implied warranty, strict tort liability, and loss of society and services on behalf of Jerildine Chellman. After all of the evidence was complete, but before the case was given to the jury, the plaintiffs voluntarily waived their negligence claims. The jury returned a verdict in favor of the defendants and answered the special questions as follows:

"1. At the time the Saab 900 Turbo SPG was sold, did it have a defective condition that was unreasonably dangerous to Chester Chellman?
    No
2. Do you find that Saab or Crest Chevrolet breached any express warranty or implied warranty of merchantability made to Chester Chellman in connection with the sale of the vehicle in question?
    No"

The plaintiffs moved to set aside the verdict and for a new trial, which the trial court denied. After trial, the plaintiffs voluntarily dismissed their claims against defendant Crest Chevrolet, Inc. We refer to the remaining defendants, Saab and Klippan, collectively as the defendants unless differentiation is necessary.

On appeal, the plaintiffs claim four errors in the court's jury instructions. First, the plaintiffs contend that the court erred in refusing to give their requested instruction that a seller's failure to provide a necessary warning may cause the product to be defective

and unreasonably dangerous. Second, the plaintiffs contend that the court's cumulative description of the defects claimed by the plaintiffs impermissibly suggested that the plaintiffs would have to prove all three alleged defects, rather than one of three, to prevail. Third, the plaintiffs challenge the instruction that if the jury found that Chellman had violated the applicable speed statute and that the violation caused the accident, then they must find that Chellman's speed was misconduct as a matter of law. Fourth, the plaintiffs challenge the court's refusal to instruct the jury that advertising may create an express warranty. We consider each issue in turn.

*I. Necessity of Instruction on "Failure to Warn"*

We begin our analysis by acknowledging the confusion that has been generated by the doctrine of strict products liability. *Buttrick v. Lessard*, 110 N.H. 36, 37–38, 260 A.2d 111, 112 (1969). At the root of the dispute in this case about the "failure to warn" theory are different concepts of the law controlling a design defect strict products liability claim. Therefore, we first address the law of liability for design defect, and then review the trial court's instructions.

We adopted the doctrine of strict products liability as expressed in the RESTATEMENT (SECOND) OF TORTS § 402-A (1965) in *Buttrick v. Lessard supra.* In *Thibault v. Sears, Roebuck & Co.*, 118 N.H. 802, 395 A.2d 843 (1978), we explained the design defect theory of strict products liability which "occurs when the product is manufactured in conformity with the intended design but the design poses unreasonable dangers to consumers." *Id.* at 807, 395 A.2d at 846. To maintain a products liability claim based on defective design, a plaintiff must prove: (1) that the design of the product created a defective condition unreasonably dangerous to the user; (2) that the condition existed when the product was sold by a seller in the business of selling such products; (3) that the use of the product was reasonably foreseeable by the manufacturer; and (4) that the condition caused injury to the user or the user's property. *Id.* at 807, 809, 395 A.2d at 846, 847; *Reid v. Spadone Mach. Co.*, 119 N.H. 457, 463, 404 A.2d 1094, 1098 (1979); RESTATEMENT (SECOND) OF TORTS § 402-A. The seller of a defectively designed and unreasonably dangerous product will be liable despite the care exercised to design a safe product.

The issue of the trial court's refusal to give a jury instruction on "failure to warn" focuses on the first element of strict products liability: whether a design defect caused the car to be unreasonably dangerous. An analysis of whether a product is unreasonably dan-

gerous requires evaluating many possible factors including a product's social utility balanced against the risk of danger, the cost and practicality of reducing the risk of danger, and the presence or absence and efficacy of a warning of hidden danger. *Thibault*, 118 N.H. at 807–08, 395 A.2d at 847. The duty to warn is part of the general duty to design, manufacture and sell products that are reasonably safe for their foreseeable uses. *Id.* If the design of a product makes a warning necessary to avoid an unreasonable risk of harm from a foreseeable use, the lack of warning or an ineffective warning causes the product to be defective and unreasonably dangerous. *Reid supra*; RESTATEMENT (SECOND) OF TORTS § 402-A comments *h, j.*

The trial court decided that "failure to warn" was not an issue in the case, in part because the defendants had not raised the defense of warning. The court refused to give a "failure to warn" jury instruction as requested by the plaintiffs. As we have clarified above, the absence of a warning may be relevant in determining whether or not a product is defectively designed and unreasonably dangerous. Therefore, if the factual question of the presence or absence of a warning was properly before the jury, the court should have given an instruction on failure to warn.

In the order denying the plaintiffs' motion to set aside the verdict and for a new trial, the trial court concluded that the "failure to warn" theory was not properly before the court. The court found that the "failure to warn" theory was not included in the plaintiffs' strict liability count in their writ, and rejected the plaintiffs' assertion that their pretrial statement sufficiently included "failure to warn" within their strict liability claim. The court concluded that not giving the requested instruction was, at worst, harmless error due to the jury's negative answer to the first special question, which indicated that the jury found that the car was not defective or unreasonably dangerous.

The defendants support the trial court's decision by arguing that a "failure to warn" claim is distinct from an ordinary design defect claim. The defendants contend that the plaintiffs did not raise or prosecute the "failure to warn" theory sufficiently to make it an issue in the case. Therefore, the defendants argue, the court appropriately did not instruct on a "failure to warn" theory.

Pleadings must inform the defendants with reasonable clarity of the claims brought against them. *Brann v. Exeter Clinic*, 127 N.H. 155, 159–60, 498 A.2d 334, 337 (1985); R. WIEBUSCH, 4 NEW HAMPSHIRE PRACTICE, CIVIL PRACTICE AND PROCEDURE § 225, at 164–65 (1984). A pretrial statement is a pleading, and parties are

bound by the claims and defenses made therein. *Welch v. Gonic Realty Trust Co.*, 128 N.H. 532, 535, 517 A.2d 808, 809 (1986). Part of the purpose of pretrial statements is to clarify and distill claims and defenses in preparation for trial. SUPER. CT. R. 62; *Welch supra*; *Brann supra*.

■ The plaintiffs clarified their products liability claims in their pretrial statement by alleging that the defendants failed "to warn the Plaintiffs of [the car's] defectively-designed nature." As explained above, the defendants' failure to warn of a condition that may be dangerous during a foreseeable use of a product makes the product defective and unreasonably dangerous due to its defective design. Therefore, the plaintiffs sufficiently stated their claim of strict products liability on a theory of design defect including failure to warn of a dangerous condition.

At trial, the plaintiffs raised the issue of warning both as to the handling characteristic known as "throttle down oversteer" or "tuck in," and as to the recommendation in the Saab owner's manual that the doors should not be locked during operation. The plaintiffs' expert witness testified that the "tuck in" phenomenon was a design defect of the plaintiffs' car about which the manufacturer should have advised and instructed consumers such as the plaintiffs. The expert also testified that the door latch would not have opened during the rollover if the door had been locked, and the plaintiffs introduced an exhibit showing Saab's recommendation in the owner's manual not to lock the doors while driving the car. The defendants' expert witness also addressed the Saab owner's manual recommendation not to lock the doors while driving. Therefore, both factual questions relating to Saab's failure to warn were presented to the jury during trial.

■■ We review jury instructions in context and will not reverse unless the charge, taken in its entirety, fails to adequately explain the law applicable to the case so that the jury could have been misled. *Broderick v. Watts*, 136 N.H. 153, 163–64, 614 A.2d 600, 607 (1992); *State v. Burrell*, 135 N.H. 715, 717–18, 609 A.2d 751, 752–53 (1992). Although the court instructed the jury on the general rule of strict liability for a design defect, the charge did not explain that the jury could consider whether failure to warn of a foreseeable danger made the product defective. The jury answered the first special question, finding no design defects that made the car defective and unreasonably dangerous, without considering whether warnings were necessary and whether the absence of warnings may have made the

car defective and unreasonably dangerous. Consideration of a warning, or lack thereof, as part of the analysis of design defect, is not obvious to a jury and must be explained through proper instruction when applicable to a case. Therefore, we hold that the charge to the jury did not adequately explain the law of strict products liability applicable to this case.

■ When a substantial error in a civil case may have caused the jury to find in the successful party's favor, the error is not harmless. *Kallgren v. Chadwick*, 134 N.H. 110, 117, 589 A.2d 120, 124 (1991). "The purpose of jury instructions is to identify issues of material fact, and to inform the jury of the appropriate standards of law by which it is to resolve them." *Broderick v. Watts*, 136 N.H. at 163, 614 A.2d at 607. Clear and intelligible jury instructions are particularly important to explain complex or confusing legal concepts. *See Gagnon v. Crane*, 126 N.H. 781, 788, 498 A.2d 718, 723 (1985). If the jury could have been misled by an erroneous instruction resulting in the verdict, reversible error has occurred. *Bernier v. Demers*, 121 N.H. 217, 218–19, 427 A.2d 514, 515 (1981). As we have explained, the jury instructions on strict liability were inadequate and could have misled the jury as to the proper considerations for determining design defect. Consequently, not giving an instruction on "failure to warn" as an element of the claim for design defect was reversible error.

In the interest of judicial economy, we will address the remaining issues to provide guidance to the court on remand of the case. *Lupa v. Jensen*, 123 N.H. 644, 646, 465 A.2d 513, 515 (1983).

## II. Grouping Alleged Defects

The plaintiffs claimed three design defects in the car: (1) the handling characteristic called "tuck in"; (2) the door latch including the instruction not to lock the door while driving; and (3) the seat belt retraction assembly. As alleged by the plaintiffs, the three defects were independent. Proof of a defect in the seat belt resulting in unreasonable danger to a user and causing injury would make Klippan liable, while proof of any of the three alleged defects and attendant unreasonable danger to a user that caused injury would make Saab liable for the resulting injuries. During the charge to the jury, the court repeatedly referred to the alleged defects in a series while instructing on the plaintiffs' burden of proof for their design defects claim. The plaintiffs contend that the jury may have been misled to understand that the plaintiffs bore the burden of proving all three component defects in order to show that the Saab was defective and unreasonably dangerous. The defendants counter that the instructions taken as a whole made it clear that the defects were separate.

■ After reviewing the instructions, we note some potential for jury confusion as to the plaintiffs' burden of proof on the defective condition of the car. Because the case will be remanded, we need not decide whether the potential for jury confusion rises to the level of reversible error on this issue. We caution, however, that when there are multiple parties, multiple claims, and alternate elements of proof for a claim, the trial court must use particular care to distinguish the subordinate elements of each of the claims as they apply to particular defendants.

*III. Instruction on Speed*

■ ■ In a strict products liability case, misconduct by the plaintiff may be an affirmative defense. *Thibault*, 118 N.H. at 813, 395 A.2d at 850. At trial, the plaintiffs admitted that Chester Chellman was exceeding the speed limit before the accident. The parties disputed his actual speed and whether his speed caused the accident. The court instructed the jury that if they found that Chellman violated the statutory speed limit and that his speed caused or contributed to cause the accident, then his speed was misconduct as a matter of law and they should determine the extent of his misconduct. The plaintiffs contend that the instruction was error and we agree.

■ The applicable speed statute, RSA 265:60 (1993), provides that speed must be reasonable and prudent given the conditions and hazards, and also sets speed limits. The statute states that speed in excess of the specified limit "shall be prima facie evidence that the speed is not reasonable or prudent and that it is unlawful." RSA 265:60, II. *Prima facie* evidence of speed in excess of the statutory limit relieves the proponent of the burden of producing further evidence that the speed was unreasonable, imprudent and unlawful. However, *prima facie* evidence may be rebutted by evidence to the contrary. *Mandell v. Company*, 94 N.H. 1, 2, 45 A.2d 577, 578 (1946). Therefore, introduction of *prima facie* evidence permits, but does not compel, the jury to find a violation of the speed statute. *State v. Condict*, 122 N.H. 1133, 1137, 455 A.2d 1013, 1015 (1982).

The question of whether the speed was reasonable and prudent was taken from the jury by the court's instruction. Speed in excess of the statutory limit was undisputed. If, as the plaintiffs contend, there was evidence presented during trial that Chellman's speed was nevertheless reasonable and prudent under the circumstances, then the jury should have been allowed to determine, based on the evidence, whether Chellman's speed violated the statute.

*IV. Instruction on Express Warranty*

The court instructed the jury on express warranty following the language of the express warranty statute, RSA 382-A:2-313(a) (1961). The plaintiffs cite as error the court's failure to include advertising as an example of an affirmation of fact in an express warranty as in the plaintiffs' requested jury instruction. Although the plaintiffs concede that the court's instruction was legally correct, they contend that it did not adequately explain the legal term, "affirmation of fact," to inform average jurors that advertising could be a warranty.

A trial court is not obligated to use the language requested by a party for jury instructions as long as the instruction given is legally correct and identifies the material factual issues in the case. *Johnston v. Lynch*, 133 N.H. 79, 89–90, 574 A.2d 934, 940 (1990). We agree with the plaintiffs that jurors may require explanation to understand that advertising under particular circumstances can create an express warranty. We need not decide, however, whether advertising should have been part of the instruction in this case. On remand, if the plaintiffs present evidence that advertising by the defendants was an affirmation of fact which became part of the basis of the bargain for the sale of the car, then we leave it to the parties and the court to formulate an appropriately informative instruction.

*Reversed and remanded.*

All concurred.