U.S. District Court
No. 96-759

KATHLEEN PRICE, GUARDIAN OVER THE ESTATE OF MATTHEW RYAN MOORE

v.

BIC CORPORATION

November 3, 1997

*Burns, Bryant, Hinchey, Cox & Rockefeller, P.A.*, of Dover (*Christine M. Rockefeller* on the brief and orally), for the plaintiff.

*Burns & Levinson*, of Boston, Massachusetts (*Charles Mark Furcolo* and *Andrew P. Botti* on the brief, and *Mr. Furcolo* orally), and *Law Office of Thomas F. Kehr*, of Concord (*Thomas F. Kehr* on the brief), for the defendant.

*Moquin & Daley, P.A.*, of Manchester (*Martin R. Jenkins* on the brief), for the NH Trial Lawyers Association, as *amicus curiae*.

HORTON, J. Pursuant to Supreme Court Rule 34, the United States District Court for the District of New Hampshire (*Barbadoro*, J.) certified to us the following question of law:

> Can the legal representative of a minor child injured as a result of the misuse of a product by another minor child maintain a defective design product liability claim against the product's manufacturer if the product was intended to be used only by adults and the risk that children might misuse the product was open and obvious to the product's manufacturer and its intended users?

We respond in the affirmative.

Since this issue arises in the context of a motion for summary judgment, the district court has presented the facts in the light most favorable to the non-moving party. We adopt the district court's recitation of the facts. In November 1991, three-year-old Douglas Moore used a BIC model J-6 lighter to start a fire that severely burned his seventeen-month-old brother, Matthew Ryan Moore. The lighter had been purchased by the boys' mother, Mary Moore.

The packaging on BIC lighters provided the warnings "Keep out of Reach of Children" and "Keep Away From Children." The defendant, BIC Corporation (BIC), was aware that the lighters could be used by children to ignite fires. BIC did not incorporate known and available child resistant features into the design of the J-6 lighter even though it was possible to do so without significantly affecting the lighter's cost or effectiveness.

The plaintiff, Kathleen Price, the guardian over the estate of Matthew Ryan Moore, contends that BIC should be strictly liable because the lighter was defectively designed in that it lacked child resistant features and adequate warnings. The plaintiff produced no evidence in response to BIC's claims that its lighters were intended to be used only by adults and that the risk that minor children might use the lighters to start fires was open and obvious to the intended users of the lighters. BIC moved for summary judgment, asserting that New Hampshire does not permit a plaintiff to maintain a strict product liability defective design claim if the injuries complained of result from a risk that is open and obvious to the product's intended users. The federal district court asks us to clarify whether we would limit strict liability defective design claims in the manner that BIC suggests.

Nearly thirty years ago this court adopted the doctrine of strict liability of manufacturers for product defects as stated in section 402A (1) of the RESTATEMENT (SECOND) OF TORTS: "One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer . . . ." RESTATEMENT (SECOND) OF TORTS § 402A (1) (1965); *see Buttrick v. Lessard*, 110 N.H. 36, 38-39, 260 A.2d 111, 113 (1969).

Several years later, we refined our strict product liability jurisprudence in *Bellotte v. Zayre Corp.*, 116 N.H. 52, 352 A.2d 723 (1976). *Bellotte* involved the issue of whether the non-flame retardant pajama top of a five-year-old child, who was burned while playing with matches, was unreasonably dangerous to the user or consumer. *Id.* at 53, 352 A.2d at 724. We stressed that sellers are not subject to strict liability unless their products are unreasonably dangerous to users or consumers. *Id.* at 54, 352 A.2d at 724. To determine whether a product was unreasonably dangerous, we adopted language from comment *i* of the RESTATEMENT (SECOND) OF TORTS § 402A, which states that the product "must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." RESTATEMENT

(SECOND) OF TORTS § 402A comment *i; see Bellotte,* 116 N.H. at 54, 352 A.2d at 725. We concluded that the definition of "unreasonably dangerous" was to be framed in terms of the child's parents who purchased the pajamas, rather than the five-year-old child who used them. *Bellotte,* 116 N.H. at 55, 352 A.2d at 725-26.

We have since further explained the plaintiff's burden in a strict liability action alleging defective design of a product. *See, e.g., LeBlanc v. American Honda Motor Co., Inc.,* 141 N.H. 579, 585-86, 688 A.2d 556, 561-62 (1997); *Chellman v. Saab-Scania AB,* 138 N.H. 73, 77, 637 A.2d 148, 150 (1993); *Reid v. Spadone Mach. Co.,* 119 N.H. 457, 463, 404 A.2d 1094, 1097 (1979), *overruled in part by Daigle v. City of Portsmouth,* 129 N.H. 561, 534 A.2d 689 (1987); *Thibault v. Sears, Roebuck & Co.,* 118 N.H. 802, 807, 395 A.2d 843, 846-47 (1978). Unlike manufacturing defect cases, which involve injury to a particular consumer from one defective item in a product line, design defect cases generally affect every item in a product line. *See Thibault,* 118 N.H. at 807, 395 A.2d at 846. "A design defect occurs when the product is manufactured in conformity with the intended design but the design itself poses unreasonable dangers to consumers." *Id.*

█ To maintain a defective design products liability claim, a plaintiff must first prove "that the design of the product created a defective condition unreasonably dangerous to the user . . . ." *LeBlanc,* 141 N.H. at 585, 688 A.2d at 561 (quotation omitted). Whether a product is dangerous to an extent beyond that which would be contemplated by the ordinary consumer is determined by the jury using a risk-utility balancing test. *See Thibault,* 118 N.H. at 809, 395 A.2d at 847-48. A product's design should meet risk-utility balancing standards as seen from the point of view of the public as a whole. *See id.* at 807, 395 A.2d at 846.

█ Determining whether a product's design is unreasonably dangerous implicates "a multifaceted balancing process involving evaluation of many conflicting factors." *Id.* at 809, 395 A.2d at 847. These factors include the social utility and desirability of the product, as "evaluated from the point of view of the public as a whole," *id.* at 807, 395 A.2d at 846, weighed against the risk of danger posed by its use, whether the risk of danger could have been reduced without significantly affecting either the product's effectiveness or cost, and the presence and efficacy of a warning to avoid an unreasonable risk of harm from hidden dangers or from foreseeable uses. *LeBlanc,* 141 N.H. at 585, 688 A.2d at 562.

■ Manufacturer liability may still attach even if the danger is obvious to a reasonable consumer or if the user employs the product in an unintended but foreseeable manner. *Thibault*, 118 N.H. at 808, 395 A.2d at 847. "The obviousness of the danger should be evaluated against the reasonableness of the steps which the manufacturer must take to reduce the danger." *Id.* at 809, 395 A.2d at 847. Further, a manufacturer's duty to warn is not limited to intended uses of its product, but also extends to all reasonably foreseeable uses to which the product may be put. *See id.* at 808, 395 A.2d at 847. "[W]hen an unreasonable danger could have been eliminated without excessive cost or loss of product efficiency, liability may attach even though the danger was obvious or there was adequate warning." *LeBlanc*, 141 N.H. at 586, 688 A.2d at 562 (quotation omitted).

■ In undertaking this analysis, we caution that the term "unreasonably dangerous" should not be interpreted so broadly as to impose absolute liability on manufacturers or make them insurers of their products. *See Elliott v. Lachance*, 109 N.H. 481, 484, 256 A.2d 153, 156 (1969). In certain cases, the court may be able to keep the issue of liability from the jury if, as a matter of law, the utility of the product to the public as a whole completely outweighs the risk posed to consumers or the risk posed by use of the product is extremely remote. *Cf. Thibault*, 118 N.H. at 808, 395 A.2d at 847 (rejecting cases finding liability for products with great utility and extremely remote risks, or risks from uses not reasonably anticipated). If the district court concludes that either of these circumstances are met, the plaintiff's defective design claims will fail.

■ For these reasons, we respond to the district court that barring a determination that the utility of the product completely outweighs the risk associated with its use or that the risk of harm is so remote as to be negligible, the legal representative of a minor child injured as a result of the misuse of a product by another minor child can maintain a defective design product liability claim against the product's manufacturer, even though the product was intended to be used only by adults, when the risk that children might misuse the product was open and obvious to the product's manufacturer and its intended users. Absent the above determination, reasonableness, foreseeability, utility of the product, and obviousness of the harm are questions of fact to be decided by the jury. *See Thibault*, 118 N.H. at 809, 395 A.2d at 847-48.

*Remanded.*

All concurred.